IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESTER GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 24-cv-447-DWD |
| WEXFORD HEALTH SOURCES, INC., | ) |
| JAMES DAWSON, | ) |
| PRECISE SPECIALTIES CORP., | ) |
| KIMBERLY HVARRE, | ) |
| UNKNOWN WEXFORD EMPLOYEES, | ) |
| UNKNOWN IDOC EMPLOYEES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Lester Green, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). The matter is now before the Court on Plaintiff's Motion to Amend (Doc. 21) and his proposed amended complaint (Doc. 21 at 3-76). Although Plaintiff is represented by counsel, he is currently incarcerated, so his complaint is still subject to review under Section 1915A. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## Background

On February 19, 2024, Plaintiff's counsel filed a complaint alleging that while incarcerated at Big Muddy Correctional Center, Plaintiff was sexually assaulted by a medical provider during a 2019 ultrasound examination. (Doc. 1). Three days after filing the case, counsel filed an Emergency Motion to Seal the Case (Doc. 9). In the Motion, counsel averred that it had quickly come to their attention that the complaint named the incorrect medical provider as the perpetrator of the sexual misconduct. Counsel requested that the case be sealed until the matter could be more thoroughly investigated and any error could be corrected. The Court granted the request and sealed the case subject to ongoing updates. (Doc. 10).

While the mis-identification issue was pending, the Court directed Plaintiff to continue with timely service to the other named parties. (Docs. 17, 20). Prior to the deadline for service to be completed on the remaining parties, Plaintiff filed Motion for Leave to Amend (Doc. 21) and the proposed amended complaint. Thus, the Court granted a motion to stay the service requirement pending a review of the amended complaint. (Docs. 22, 23).

## The Proposed Amended Complaint

The Amended Complaint alleges that on September 11, 2019, Plaintiff encountered Defendant James Dawson at Big Muddy River for a kidney ultrasound. (Doc. 21 at ¶ 6). At the time, Dawson was a sonographer and owner of Precise Specialties Corporation, a company that was under contract with the Illinois Department of Corrections (IDOC) or Wexford to perform ultrasound exams throughout the IDOC prisons. (Doc. 21 at ¶ 4).

Prior to the exam, Dawson asked whether Plaintiff had ever received an ultrasound, to which Plaintiff indicated he had not. (*Id.* at ¶ 6). Dawson instructed Plaintiff to lie on his back on the exam table and to raise his shirt. Dawson applied a gel on Plaintiff's stomach, back, and sides and commenced the ultrasound. During the exam, Dawson instructed Plaintiff to pull his pants down, and Dawson proceeded to touch Plaintiff's genitals and to sexually assault him. (*Id.* at ¶ 6). Plaintiff alleges he could not resist Dawson's conduct because of the power imbalance between staff and inmates. (*Id.* at ¶ 7). Plaintiff claims Dawson took advantage of the power dynamic and acted within the scope of employment with Precise Specialties Corporation. (*Id.* at ¶ 8).

Plaintiff had a subsequent ultrasound in February of 2023, at which time he alleges he eventually realized the sexual assault was not a part of a routine ultrasound exam. (*Id.* at ¶ 10-11).

Plaintiff faults Defendant Kimberly Hvarre, the Warden, for contracting with Wexford, for overseeing its employees and contractors, and for failing to implement any protective measures at Big Muddy that may have prevented the sexual assault. (*Id.* at ¶ 12). For example, he alleges Hvarre failed to implement protective measures such as nurses patrolling hallways, requiring the attendance of multiple providers at single appointments, designing the medical unit so exam rooms were always within sight, or timely investigating sexual assault rumors or complaints. (*Id.*). Plaintiff alleges Wexford should be held responsible for the same shortcomings as Hvarre. (*Id.* at ¶ 14). Plaintiff alleges neither Hvarre nor Wexford had any legitimate purpose for structuring the

medical unit in such a manner or for failing to implement preventive measures. (*Id.* at ¶¶ 13, 15).

These same 16 paragraphs of factual allegations are repeated nearly verbatim for each of the 13 enumerated claims. The anomaly appears to be with the 14th paragraph of each set of factual allegations. In most counts, this paragraph discusses Wexford's liability, but in three claims Precise Specialties' name takes the place of or joins Wexford's name with factual allegations that are otherwise identical. *Compare* (Doc. 21 at p. 6 ¶ 14) *with* (Doc. 21 at p. 27 ¶ 142); (Doc. 21 at p. 67 ¶ 381); (Doc. 21 at p. 72 ¶ 415).

Each series of factual allegation paragraphs is then followed by a two-paragraph subsection on "jurisdiction" and an additional subsection on the "parties" to each claim. The "parties" sections are also nearly repeated verbatim, with the last four or so paragraphs of each "parties" subsection containing varied allegations that appear targeted to address the elements of the various causes of action.

In the "parties" sections of the pleading, Plaintiff alleges that the "unknown IDOC employees" were responsible "for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances." (Doc. 21 at 7). In this same section, Plaintiff alleges "each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners[.]" (Doc. 21 at 8). Plaintiff argues there was no valid penological justification for exposing him to the assault, the defendants' conduct amounted to cruel and unusual punishment, the IDOC and Wexford defendants had a supervisory

responsibility to prevent and stop the assault, and he suffered physical and emotional harm from the assault.

Plaintiff's pleading enumerates the following claims, all premised on the same factual allegations recounted above:

Claim 1: **Claims pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment Against James Dawson;**

Claim 2: **Claims pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment Against Warden Hvarre and Unknown Big Muddy River Correctional Center Employees;**

Claim 3: **Claims pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment Against Wexford and unknown Wexford employees;**

Claim 4: **Respondeat superior – state law claim: Intentional Infliction of Emotional Distress Against Wexford;**

Claim 5: **Respondeat superior – state law claim: Intentional Infliction of Emotional Distress against Precise Specialties Corporation;**

Claim 6: **State law claim: Intentional Infliction of Emotional Distress against Warden Hvarre and Unknown Big Muddy River Correctional Center Employees;**

Claim 7: **Respondeat superior — state law claim: sexual battery against Wexford;**

Claim 8: **State law claim: sexual battery against Warden Hvarre and Unknown Big Muddy Correctional Center employees;**

Claim 9: **State law claim: sexual battery against James Dawson;**

Claim 10: **State law claim: negligence against James Dawson;**

Claim 11: **Respondeat superior — state law claim: negligence against Wexford**

Claim 12: **Intentional infliction of emotional distress against James Dawson;**

>   **Claim 13:**[1]   Respondeat superior—state law claim: sexual battery against Precision Specialties Corporation.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

To survive preliminary review under Section 1915A, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and which includes "enough facts to state a claim to relief that is plausible on its face." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Plaintiff is required to associate specific defendants with specific claims so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *Id.* at 555. Further, because Plaintiff brings his claims under Section 1983, he must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); see also *Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under

---

[1] This claim is mis-number in the complaint as Claim 12, but the Court refers to it as Claim 13 for clarity. (Doc. 21 at 69). It also appears that Defendant Precise Specialties Corporation is mis-named in this claim as "Precision" Specialties Corporation.

§ 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Furthermore, a generic assertion that one or more defendants engaged in constitutional violations is not adequately specific. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

Although this complaint is presented as a civil rights action under 42 U.S.C. § 1983, the pleading is largely deficient of information to demonstrate the personal involvement of individual defendants aside from Defendant Dawson. As for Defendant Hvarre, the unknown IDOC employees, or the unknown Wexford employees, Plaintiff says nothing to sufficiently demonstrate that these individuals played a direct and personal role in the assault Plaintiff suffered on September 11, 2019. The factual allegations that are repeated countless times in the pleading only suggest that as warden, Hvarre *should* have thought to implement protective measures to guard against sexual assault in the prison's medical unit, but this speculation is insufficient to demonstrate that Hvarre actually knew there was any risk or reason to act, and the suggestions for what could have been done are no more than mere conjecture.

The allegations include things like Hvarre should have required nurses to patrol the halls of the medical unit, she should have timely investigated sexual assault rumors or complaints, and she should have structured the medical unit so that someone could see into the exam rooms or hallways. None of these suggestions are tied to Plaintiff's own experience, or to Hvarre's actual day-to-day knowledge or conduct at the facility. As such, the allegations about Hvarre's personal involvement are too weak to survive initial review. Hvarre is named in Claim 2 under § 1983 and the Eighth Amendment, and

in Claims 6 and 8 for state law violations. Because Claim 2 is insufficient, the Court relinquishes supplemental jurisdiction over state law claims 6 and 8.

There are no factual allegations directly targeted to the conduct of the "unknown" IDOC or Wexford defendants.

Oddly, in the "parties" section of each individually designated claim, Plaintiff provided slightly more detail by alleging that "each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners," but this is not enough to demonstrate sufficient personal involvement for purposes of a Section 1983 claim. (Doc. 21 at 6). The assertion that "one or more defendants harmed" me, is simply not enough for a § 1983 claim. *See, Brooks*, 578 F.3d at 580. He also alleged things such as, "one or more as-yet unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances." (Doc. 21 at 7). Not only is this allegation too generic to identify the personal actions of individual defendants, but the actions alleged also are not inherently unconstitutional.

For example, the mere role of processing grievances, even when errors occur, is not sufficient to state a claim. *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the mere mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim). Additionally, there is no supervisory liability under § 1983, so the assertion that the unnamed defendants *should have* monitored others does not immediately give rise to a claim under § 1983. *See e.g., Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022) ("supervisory liability cannot

attach under § 1983 absent a showing the officer is personally responsible for a deprivation of a constitutional right.")

Given the overly generic nature of the allegations against the unnamed IDOC and Wexford defendants, the Court finds that Plaintiff's Amended Complaint is insufficient to state a claim against these groups of defendants. These groups are named in Claims 2 and 3 under § 1983, and under claims 6 and 8 for state law violations. All claims are dismissed as insufficient against the unknown IDOC or Wexford employees.

Claim 3 against Wexford is similarly vague and is not sufficient to proceed beyond initial review. Plaintiff faults Wexford generically for failing "to implement preventive policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints." (Doc. 21 at 17). The only reason Plaintiff gives for Wexford even possibly needing to suspect these measures are necessary is because of the "power imbalance between prisoners and staff." (Doc. 21 at 15). There are no allegations suggesting that before the assault on Plaintiff, Wexford knew or should have known that there was a risk of sexual assault in the medical care setting. Nor is there any suggestion they were ever notified of this assault after the fact.

Wexford is a corporation who contracts with the state to provide medical care in the prisons. Under controlling precedent, Wexford may be held liable for a constitutional harm caused by: (1) an express government policy; (2) a widespread and persistent

practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *See e.g.*, Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021). "In applying *Monell* and avoiding *respondeat superior* liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." Id. at 654.

In addition to an express policy, a widespread custom, or a decision by a final policymaker, courts have also established that in some circumstances, the absence of a policy can also amount to a *Monell* violation. *See e.g.*, Glisson v. Indiana Dept. of Corr., 849 F.3d 372, 379-80 (7th Cir. 2017) (collecting cases on the absence of a policy in the context of deliberate indifference to a medical need). The Seventh Circuit noted, "[i]n some cases, it may be difficult to tell the difference between inadvertence and a policy to omit something[.]" Glisson, 849 F.3d at 379. In *Glisson*, an inmate's widow brought a *Monell* claim against a corporate medical contractor on the premise that the prison medical staff lacked a strategy to coordinate care, which led to her husband's death from starvation, acute renal failure, and associated conditions. Guidance about coordinated care existed from the Indiana Department of Corrections, but the contractor did not implement that guidance. The Seventh Circuit noted that although the failure to implement guidance alone may not be constitutionally deficient, a jury could find that the contractor's utter failure to have established protocols for coordinated care of chronic illness could be deliberate indifference and could have been the cause of the plaintiff's death. Thus, an 'absence of policy' claim was returned to the trial court for further consideration.

Here, Plaintiff's allegations are much more generic than claims like those presented in other cases on *Monell* liability. Plaintiff attempts to plead an absence of policy claim, but the facts alleged by Plaintiff amount to the wrongdoing of a single rogue employee, and the Court does not find it plausible that a corporate medical contractor should need to assume it may need to create policies to prevent sexual assaults by medical staff on inmates. At most, Plaintiff alleges that the power imbalance between staff and inmates makes the risk obvious, but this risk would extend to all prison personnel, not just medical providers. There is also no suggestion in the pleading itself that the wrongdoing expanded beyond Plaintiff or that Wexford had notice of this issue or the risk of this issue beforehand. On the facts, alleged, Plaintiff simply has not made out a plausible *Monell* claim.

Next, the Court considers the state law *respondeat superior* claims (4, 5, 7, 11, 13) against Wexford and Precise Specialties—both alleged employers of James Dawson. *Respondeat superior* liability hinges upon a finding that the employee acted in furtherance of his employer's interest when committing the acts complained of. *Bates v. Doria*, 502 N.E.2d 454, 457 (Ill. App. Ct. 1986). Illinois has consistently held that acts of sexual misconduct are per se unrelated to any employer's business. *Delony v. Bd. of Educ. of Thornton Township*, 666 N.E.2d 792, 797-98 (Ill. App. Ct. 1996); *Randi F. v. High Ridge Y.M.C.A.*, 524 N.E.2d 966, 968 (Ill. App. Ct. 1988). The allegations of sexual battery, intentional infliction of emotional distress, and negligence against Wexford and Precise Specialties are tied directly into Dawson's alleged sexual misconduct, an action which cannot be attributed to any of his possible employers. *See e.g., Deborah K. v. Sperlik*, 2005

WL 3299804 at *3 (N.D. Ill. Nov. 30, 2005) (dismissing battery and intentional infliction of emotional distress claims brought under a theory of respondeat superior against a school district because, as an employer of a teacher who committed sexual assaults or batteries, it could not be held liable for such acts that were *per se* not related to the district's business). Thus, the Court finds it appropriate to dismiss Claims 4, 5, 7, 11, and 13 against Defendants Wexford and Precise Specialties.

This leaves the claims against Defendant Dawson: Claim 1 (an Eighth Amendment claim), Claim 9 (a state law sexual battery claim), Claim 10 (a state law negligence claim), and Claim 12 (a state law intentional infliction of emotional distress claim). The Court will allow these claims to proceed beyond initial review against Defendant Dawson. If at any time the sole claim over which this court has federal jurisdiction (Claim 1) is dismissed, then the Court will relinquish supplemental jurisdiction over the state law claims (Claims 9, 10, 12).

## Disposition

Plaintiff's Motion to Amend (Doc. 21) is **GRANTED**. The Clerk of Court is **DIRECTED** to **SUBSTITUTE** the presently named doctor on the CM/ECF docket sheet for the generic "Prison Doctor" and to **TERMINATE** this party. The Clerk is **DIRECTED** to make this change to the sole text entry that mentions this doctor—the docket text with document 8. This will accomplish the goal of not revealing the mis-named medical provider. The Clerk of Court is then **DIRECTED** to **UNSEAL** this case. However, Documents 1, 5, and 8 shall **REMAIN SEALED** because these documents contain the doctor's name.

The Clerk of Court is also **DIRECTED** to **ADD** the new parties included in the Amended Complaint (Doc. 21): James Dawson and Precise Specialties Corporation.

**IT IS HEREBY ORDERED THAT Claims 1, 9, 10, and 12** of the Amended Complaint (Doc. 21) survive initial screening as described above against James Dawson. Counsel is responsible for seeking summons and for serving Defendant Dawson with this matter. Counsel is also responsible for filing the Amended Complaint (Doc. 21) on the docket sheet as a freestanding document.

By contrast, Claims 2-8, 11, and 13 are insufficient to state a claim. Plaintiff has failed to state a valid claim against Defendants Kimberly Hvarre, Unknown IDOC employees, Unknown Wexford employees, Wexford Health Sources, Inc., and Precise Specialties Corporation, and the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

Dated: September 18, 2024

_____
DAVID W. DUGAN
United States District Judge