**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LESTER GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) 24 cv 00447 - DWD |
| WEXFORD HEALTH SOURCES INC., a Pennsylvania corporation, | ) |
| JAMES DAWSON, | ) |
| PRECISE SPECIALITIES CORPORATION, an Illinois corporation, | ) |
| WARDEN KIMBERLY HVARRE, | ) |
| Unknown Wexford Employees; and | ) |
| Unknown Illinois Department of Corrections Employees, | ) Plaintiff demands |
| | ) jury trial. |
| | ) |
| Defendants. | ) |

## <u>Amended COMPLAINT</u>

Plaintiff, LESTER GREEN, complaining of Defendants WEXFORD HEALTH SOURCES INC.,

a Pennsylvania corporation, WARDEN HVARRE, JAMES DAWSON, PRECISE

SPECIALITIES CORPORATION, an Illinois corporation; Unknown Wexford Employees, and

Unknown Illinois Department of Corrections Employees, (also herein "Unknown Big Muddy

employees" and "Unknown IDOC employees") state as follows:

### Count I – Claims Pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment Against James Dawson

1. This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when
   he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy
   River Correctional Center in the Southern District of Illinois.

2. Big Muddy River Correctional Center is one of the facilities run by the Illinois Department
   of Corrections ("IDOC") that houses male inmates.

3. Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

4. Defendant James Dawson was a sonographer and owner of Precise Specialities Corporation, an Illinois corporation, and was the company's final decision maker. Alternatively, Dawson was an employee of Precise Specialities Corporation. Under contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

5. The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients. This gave James Dawson the opportunity to engage in sexual abuse.

6. During the appointment on September 11, 2019, the following occurred:

> a) Plaintiff went to Health Care for a kidney ultrasound;

> b) James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

> c) Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

> d) James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

> e) James Dawson proceeded to ask Plaintiff to pull his pants down;

> f) James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g) James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

7. The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

8. Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

9. James Dawson acted within the scope of his employment with Precise Specialities Corporation.

10. When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

11. This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

12. Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit,

requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

13. There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

14. Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

15. There was no legitimate purpose for Wexford's failures to implement preventative measures.

16. Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

**Jurisdiction and Venue**

17. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

18. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

**Parties**

19. Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson.

20. Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

21. Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

22. At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

23. At all times relevant to the events at issue in this case, Defendants James Dawson, was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

24. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center. In this capacity, Defendant Hvarre was acting under color of law.

25. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

26. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

27. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

28. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

29. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

30. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

31. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant James Dawson . LESTER GREEN, further demands an award of punitive damages against Defendant James Dawson .

**Count II – Claims Pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment**

**Against Warden Hvarre and Unknown Big Muddy River Correctional Center employees**

32. This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

33. Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

34. Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

35. .Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

36. The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

37. During the appointment on September 11, 2019, the following occurred:

    a)        Plaintiff went to Health Care for a kidney ultrasound;

    b)        James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

    c)        Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d) James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e) James Dawson proceeded to ask Plaintiff to pull his pants down;

f) James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g) James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

38. The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

39. Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

40. James Dawson acted within the scope of his employment with Precise Specialities Corporation.

41. When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

42. This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

43. Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

44. There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

45. Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

46. There was no legitimate purpose for Wexford's failures to implement preventative measures.

47. Plaintiff brings this action to compensate the Plaintiff who was victimized by theseDefendants and, hopefully, to bring change.

## Jurisdiction and Venue

48. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

49. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

50. Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

51. Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

52. Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

53. At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

54. At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

55. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center. In this capacity, Defendant Hvarre was acting under color of law.

56. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

57. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

58. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

59. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

60. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

61. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

62. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Warden Hvarre and unknown employees at Big Muddy River Correctional Center. LESTER GREEN, further demands an award of punitive damages against Defendants Warden Hvarre and unknown employees at Big Muddy River Correctional Center.

**Count III – Claims Pursuant to 42 U.S.C. § 1983 Violations of the Eighth Amendment Against Wexford and unknown Wexford employees**

63. This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

64. Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

65. Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

66. Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

67. The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

68. During the appointment on September 11, 2019, the following occurred:

a)      Plaintiff went to Health Care for a kidney ultrasound;

b)      James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)      Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

69.  The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

70. Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

71. James Dawson acted within the scope of his employment with Precise Specialities Corporation.

72. When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

73. This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

74. Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

75. There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

76. Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend

appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

77. There was no legitimate purpose for Wexford's failures to implement preventative measures.

78. Plaintiff brings this action to compensate the Plaintiff who was victimized by theseDefendants and, hopefully, to bring change.

## Jurisdiction and Venue

79. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

80. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

81. Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

82. Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

83. Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is

ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

84. At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

85. At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

86. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center. In this capacity, Defendant Hvarre was acting under color of law.

87. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

88. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

89. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

90. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

91. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

92. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

93. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Wexford and Unknown Wexford employees. LESTER GREEN, further demands an award of punitive damages against Wexford and Unknown Wexford employees.

### Count IV – Respondeat Superior–State Law Claim: Intentional Infliction of Emotional Distress Against Wexford

94. This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

95. Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

96. Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

97. Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound

examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

98. The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients. This gave James Dawson the opportunity to engage in sexual abuse.

99. During the appointment on September 11, 2019, the following occurred:

      a)      Plaintiff went to Health Care for a kidney ultrasound;

      b)      James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

      c)      Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

      d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

      e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

      f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

      g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure

that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

100.     The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

101.     Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

102.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

103.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

104.     This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

105.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit,

requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

106.    There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

107.    Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

108.    There was no legitimate purpose for Wexford's failures to implement preventative measures.

109.    Plaintiff brings this action to compensate the Plaintiff who was victimized by theseDefendants and, hopefully, to bring change.

## Jurisdiction and Venue

110.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

111.    Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

112.    Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

113.    Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

114.    Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

115.    At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

116.    At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

117.    At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

118. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

119. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

120. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

121. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

122. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

123. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

124. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

125. James Dawson's acts of sexual abuse were done intentionally or recklessly.

126. Said conduct was extreme and outrageous.

127. Said conduct caused the plaintiff to suffer severe emotional distress.

128. Wexford is liable for these torts as the employer / master of James Dawson .

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Wexford. LESTER GREEN, further demands an award of punitive damages against Wexford.

### Count V – Respondeat Superior- State Law Claim: Intentional Infliction of Emotional Distress Against Precise Specialities Corporation

129.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

130.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

131.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

132.     Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities Corporation. Under contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

133.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

134.     During the appointment on September 11, 2019, the following occurred:

     a)     Plaintiff went to Health Care for a kidney ultrasound;

b)      James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)      Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

135.      The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

136.      Taking advantage of this dynamic, James Dawson  sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

137.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

138.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

139.     This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

140.     Defendant Kimberly Hvarre contracted with Wexford and/or Precision Specialities Corporation and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

141.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

142.     Defendant Precise Specialities Corporation did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as requiring two or more medical treaters to attend appointments, structuring the appointments so that someone could see into the medical exam rooms, requiring guards

to be within sight of the medical exam rooms, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

143.    There was no legitimate purpose for Precise Specialities Corporation's failures to implement preventative measures.

144.    Plaintiff brings this action to compensate the Plaintiff who was victimized by this Defendant, Precise Specialities Corporation, and, hopefully, to bring change.

## Jurisdiction and Venue

145.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

146.    Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

147.    Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

148.    Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

149.    Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

150.    At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

151.    At all times relevant to the events at issue in this case, Defendant James Dawson and/or Precise Specialities Corporation, was employed and/or contracted by Wexford and/or the IDOC and provided medical treaters such as James Dawson, and as such, was acting under color of law.

152.    At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

153.    Each defendant knew of James Dawson's  sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

154.    James Dawson's  scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's  advances.

155.    There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

156.    By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

157.     As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

158.     Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD and/or Precision Specialities Corporation employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

159.     As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

160.     James Dawson's acts of sexual abuse were done intentionally or recklessly.

161.     Said conduct was extreme and outrageous.

162.     Said conduct caused the plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Precise Specialities Corporation. LESTER GREEN, further demands an award of punitive damages against Precise Specialities Corporation.

### Count VI – State Law Claim: Intentional Infliction of Emotional Distress Against Warden Hvarre and Unknown Big Muddy River Correctional Center employees

163.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

164.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

165.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

166.    Defendant James Dawson was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker. Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

167.    The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients. This gave James Dawson the opportunity to engage in sexual abuse.

168.    During the appointment on September 11, 2019, the following occurred:

    a)    Plaintiff went to Health Care for a kidney ultrasound;

    b)    James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

    c)    Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

    d)    James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

    e)    James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

169.     The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

170.     Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

171.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

172.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

173.     This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

174.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such

as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

175.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

176.     Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

177.     There was no legitimate purpose for Wexford's failures to implement preventative measures.

178.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

179.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

180.    Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

**Parties**

181.    Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

182.    Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

183.    Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

184.    At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

185.    At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

186. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center. In this capacity, Defendant Hvarre was acting under color of law.

187. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

188. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

189. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

190. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

191. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

192. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

193. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

194. James Dawson's acts of sexual abuse were done intentionally or recklessly.

195. Said conduct was extreme and outrageous.

196.     Said conduct caused the plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Warden Hvarre and Unknown Big Muddy Correctional Center employees. LESTER GREEN, further demands an award of punitive damages against Warden Hvarre and Unknown Big Muddy Correctional Center employees.

### Count VII – Respondeat Superior –State Law Claim: Sexual Battery Against Wexford.

197.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

198.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

199.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

200.     Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

201.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

202.     During the appointment on September 11, 2019, the following occurred:

a)      Plaintiff went to Health Care for a kidney ultrasound;

b)      James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)      Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

203.    The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson.

204.     Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

205.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

206.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

207.     This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

208.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

209.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

210.     Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having

nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

211.     There was no legitimate purpose for Wexford's failures to implement preventative measures.

212.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

213.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

214.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

215.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

216.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

217.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

218.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

219.     At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

220.     At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

221.     Each defendant knew of James Dawson's  sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

222.     James Dawson's  scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's  advances.

223.     There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

224.     By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

225.     As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

226.     Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

227.     As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

228.     James Dawson intended to engage in non-consensual sexual contact with Plaintiff, to which Plaintiff did not consent.

229.     James Dawson did in fact have non-consensual sexual contact with Plaintiff.

230.     As a proxmate result of said sexual contact, Plaintiff suffered mental harm.

231.     Wexford is liable for these torts as the employer/master of James Dawson .

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Wexford. LESTER GREEN, further demands an award of punitive damages against Wexford.

### Count VIII – State Law Claim: Sexual Battery Against Warden Hvarre and Unknown Big Muddy Correctional Center employees

232.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

233.    Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

234.    Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

235.    Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

236.    The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

237.    During the appointment on September 11, 2019, the following occurred:

   a)    Plaintiff went to Health Care for a kidney ultrasound;

   b)    James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

   c)    Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

   d)    James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)     James Dawson proceeded to ask Plaintiff to pull his pants down;

f)     James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)     James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

238.     The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson.

239.     Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

240.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

241.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

242.     This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

243.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

244.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

245.     Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

246.     There was no legitimate purpose for Wexford's failures to implement preventative measures.

247.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

248.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

249.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

250.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

251.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

252.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

253.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

254. At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

255. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

256. Each defendant knew of James Dawson's  sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

257. James Dawson's  scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's  advances.

258. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

259. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

260. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

261. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

262. As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

263. James Dawson intended to engage in non-consensual sexual contact with Plaintiff, to which Plaintiff did not consent.

264. James Dawson did in fact have non-consensual sexual contact with Plaintiff.

265. As a proxmate result of said sexual contact, Plaintiff suffered mental harm.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Warden Hvarre and Unknown Big Muddy Correctional Center employees. LESTER GREEN, further demands an award of punitive damages against Warden Hvarre and Unknown Big Muddy Correctional Center employees.

### Count IX – State Law Claim: Sexual Battery Against James Dawson

266. This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

267. Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

268. Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

269. Defendant James Dawson was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker. Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound

examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

270.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

271.     During the appointment on September 11, 2019, the following occurred:

a)     Plaintiff went to Health Care for a kidney ultrasound;

b)     James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)     Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)     James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)     James Dawson proceeded to ask Plaintiff to pull his pants down;

f)     James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)     James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure

that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

272.     The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson.

273.     Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

274.     James Dawson acted within the scope of his employment with Precise Specialities Corporation.

275.     When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

276.     This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

277.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit,

requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

278.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

279.     Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

280.     There was no legitimate purpose for Wexford's failures to implement preventative measures.

281.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

282.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

283.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

284.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson.

285.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

286.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

287.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

288.     At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

289.     At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

290.     Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

291.     James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

292.     There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

293.     By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

294.     As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

295.     Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

296.     As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

297.     James Dawson intended to engage in non-consensual sexual contact with Plaintiff, to which Plaintiff did not consent.

298.     James Dawson did in fact have non-consensual sexual contact with Plaintiff.

299.     As a proxmate result of said sexual contact, Plaintiff suffered mental harm.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant James Dawson .  LESTER GREEN, further demands an award of punitive damages against Defendant James Dawson .

### Count X – State Law Claim: Negligence Against James Dawson

300.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

301.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

302.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

303.     Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

304.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

305.     During the appointment on September 11, 2019, the following occurred:

   a)     Plaintiff went to Health Care for a kidney ultrasound;

b)      James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)      Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

306.      The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

307.      Taking advantage of this dynamic, James Dawson  sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

308.    James Dawson acted within the scope of his employment with Precise Specialities Corporation.

309.    When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

310.    This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

311.    Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

312.    There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

313.    Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit,

requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

314.    There was no legitimate purpose for Wexford's failures to implement preventative measures.

315.    Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

316.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

317.    Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

318.    Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson.

319.    Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

320.    Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

321.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

322.     At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

323.     At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

324.     Each defendant knew of James Dawson's  sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

325.     James Dawson's  scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitalize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's  advances.

326.     There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

327.     By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

328.     As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

329.     James Dawson owed a legal duty of care to the Plaintiff as a medical provider of the prisoners.

330.     James Dawson breached the duty of care by failing to take reasonable steps to protect prisoners, including Plaintiff, from sexual assault.

331.     James Dawson was the actual and proximate cause of Plaintiff's physical and emotional injuries.

332.     James Dawson could reasonably see that the failure to act would result in Plaintiff's injuries, considering the risks of sexual assault in prison and Defendants' failures to do anything to prevent it.

333.     Plaintiff suffered physical and emotional damages as a result of James Dawson's negligence.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant James Dawson .

### Count XI – Respondeat Superior- State Law Claim: Negligence Against Wexford

334.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

335.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

336.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

337.     Defendant James Dawson was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker. Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

338.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients. This gave James Dawson the opportunity to engage in sexual abuse.

339.     During the appointment on September 11, 2019, the following occurred:

    a)     Plaintiff went to Health Care for a kidney ultrasound;

    b)     James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

    c)     Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

    d)     James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

    e)     James Dawson proceeded to ask Plaintiff to pull his pants down;

f) James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g) James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

340. The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

341. Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.with Precise Specialities Corporation.

342. James Dawson acted within the scope of his employment

343. When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

344. This confirmed for Plaintiff that he was assaulted by James Dawson . Plaintiff exhausted all of his administrative remedies.

345. Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to

attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

346.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

347.     Defendant Wexford did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

348.     There was no legitimate purpose for Wexford's failures to implement preventative measures.

349.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

350.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

351.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

352.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

353.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

354.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

355.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

356.     At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

357.     At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

358.     Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

359.     James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

360.     There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

361.     By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

362.     As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

363.     Wexford and the Unknown Wexford employees owed a legal duty of care to the Plaintiff as a medical provider of the prisoners.

364.     Wexford and the Unknown Wexford employees breached the duty of care by failing to take reasonable steps to protect prisoners, including Plaintiff, from sexual assault.

365.     Wexford and the Unknown Wexford employees were the actual and proximate cause of Plaintiff's physical and emotional injuries. If Wexford and the Unknown Wexford Employees had intervened as is their duty, and taken steps to prevent sexual assault, the Plaintiff would not have suffered their injuries.

366.     Wexford and the Unknown Wexford employees could reasonably see that the failure to act would result in Plaintiff's injuries, considering the risks of sexual assault in prison and Defendants' failures to do anything to prevent it.

367.     Plaintiff suffered physical and emotional damages as a result of Wexford and the Unknown Wexford employees negligence.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendants Wexford and the Unknown Wexford employees.

**Count XII- Intentional Infliction of Emotional Distress  against James Dawson**

368.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

369.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

370.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

371.     Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities CorporationUnder contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

372.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients. This gave James Dawson the opportunity to engage in sexual abuse.

373.     During the appointment on September 11, 2019, the following occurred:

   a)     Plaintiff went to Health Care for a kidney ultrasound;

   b)     James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

   c)     Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

   d)     James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

   e)     James Dawson proceeded to ask Plaintiff to pull his pants down;

   f)     James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

   g)     James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

374. The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson .

375. Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

376. James Dawson acted within the scope of his employment with Precise Specialities Corporation.

377. When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

378. This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

379. Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

380.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

381.     Defendant Precise Specialities Corporation did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative policies such as requiring two or more medical treaters to attend appointments, structuring the appointments so that someone could see into the medical exam rooms, requiring guards to be within sight of the medical exam rooms, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

382.     There was no legitimate purpose for Precise Specialities Corporation's failures to implement preventative measures.

383.     Plaintiff brings this action to compensate the Plaintiff who was victimized by this Defendant, Precise Specialities Corporation, and, hopefully, to bring change.

## Jurisdiction and Venue

384.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

385.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

386.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

387.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the

State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

388.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

389.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

390.     At all times relevant to the events at issue in this case, Defendant James Dawson and/or Precise Specialities Corporation, was employed and/or contracted by Wexford and/or the IDOC and provided medical treaters such as James Dawson, and as such, was acting under color of law.

391.     At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center.  In this capacity, Defendant Hvarre was acting under color of law.

392.     Each defendant knew of James Dawson's  sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

393.    James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

394.    There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

395.    By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

396.    As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

397.    Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

398.    As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

399.    James Dawson's acts of sexual abuse were done intentionally or recklessly.

400.    Said conduct was extreme and outrageous.

401.    Said conduct caused the plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant James Dawson. LESTER GREEN, further demands an award of punitive damages against James Dawson.

## XII. Respondeat Superior- State Law Claim: Sexual Battery against Precision Specialities Corporation

402.     This is an action pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's rights when he was sexually assaulted by Defendant James Dawson while incarcerated at Big Muddy River Correctional Center in the Southern District of Illinois.

403.     Big Muddy River Correctional Center is one of the facilities run by the Illinois Department of Corrections ("IDOC") that houses male inmates.

404.     Kimberly Hvarre is the Warden of Big Muddy River Correctional Center.

405.     Defendant James Dawson  was a sonographer and owner of Precise Specialities Corporation and was the company's final decision maker.  Alternatively, Dawson was an employee of Precise Specialities Corporation. Under contract with the IDOC and/or Wexford, Dawson and/or Precise Specialities Corporation performed scheduled ultrasound examinations that produced sonograms at prisons throughout the Illinois Department of Corrections.

406.     The appointments at Big Muddy River Correctional Center left James Dawson alone with the patients.  This gave James Dawson the opportunity to engage in sexual abuse.

407.     During the appointment on September 11, 2019, the following occurred:

a)     Plaintiff went to Health Care for a kidney ultrasound;

b)     James Dawson explained he was going to give Plaintiff an ultrasound and asked if Plaintiff had had one before, to which Plaintiff responded that he had not;

c)     Plaintiff was instructed by James Dawson to lie on his back on a risen platform and raise his shirt;

d)      James Dawson applied a gel or lubricant on Plaintiff's stomach, back and sides and placed the ultrasound device on Plaintiff to which he moved around in circular motions for around 4 minutes;

e)      James Dawson proceeded to ask Plaintiff to pull his pants down;

f)      James Dawson began rubbing Plaintiff's genitals for around 2 minutes, sexually assaulting Plaintiff;

g)      James Dawson proceeded to masturbate Plaintiff and when Plaintiff asked what James Dawson was doing, he responded that he was making sure that Plaintiff's kidneys were working correctly, while sexually assaulting Plaintiff for about 3-4 minutes.

408.      The Plaintiff was unable to resist James Dawson because of Plaintiff's status as a prisoner, James Dawson's status as a staff, the power imbalance between prisoners and staff, and the danger of retaliation for complaining against James Dawson.

409.      Taking advantage of this dynamic, James Dawson sexually assaulted the Plaintiff during Plaintiff's medical examination and acted as though the assault was part of the medical exam.

410.      James Dawson acted within the scope of his employment with Precise Specialities Corporation.

411.      When Plaintiff went for another kidney ultrasound in February 2023, which was conducted by a different treater, Plaintiff was only asked to raise his shirt and had his stomach, back and sides checked, and was not asked to pull his pants down or sexually assaulted.

412.     This confirmed for Plaintiff that he was assaulted by James Dawson. Plaintiff exhausted all of his administrative remedies.

413.     Defendant Kimberly Hvarre contracted with Wexford and its employees, oversaw its employees and contractors, and did nothing to prevent sexual assault to Big Muddy River Correctional Center prisoners, and failed to implement preventative measures such as nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

414.     There was no legitimate purpose for structuring the medical unit in such a manner and failing to implement preventative measures.

415.     Defendant Wexford and/or Precision Specialities Corporation did nothing to prevent sexual assault to Big Muddy River  Correctional Center prisoners, and failed to implement preventative policies such as having nurses patrolling the medical unit hallways, requiring two or more medical treaters to attend appointments, structuring the medical unit so that someone could see into the medical exam rooms or hallways, requiring guards to be within sight of the medical unit, requiring the exam room doors to remain open, or timely investigating sexual assault rumors or complaints.

416.     There was no legitimate purpose for Wexford's and/or Precision Specialities Corporation failures to implement preventative measures.

417.     Plaintiff brings this action to compensate the Plaintiff who was victimized by these Defendants and, hopefully, to bring change.

## Jurisdiction and Venue

418.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff asserts claims under federal law and the state law claim arises out of the same facts as the federal claims.

419.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

420.     Plaintiff, LESTER GREEN, was incarcerated at Big Muddy River Correctional Center and was sexually assaulted by Defendant James Dawson .

421.     Defendant WEXFORD HEALTH SOURCES, INC. ("Wexford") is a corporation headquartered in Pennsylvania and doing business in Illinois. Wexford contracts with the State of Illinois to provide healthcare at IDOC prisons throughout the state, including Big Muddy River Correctional Center.

422.     Big Muddy River Correctional Center is a medium-security adult male correctional facility in Ina, Illinois. The "most important goal" of Big Muddy River Correctional Center, "is ensuring that individuals in custody housed at the facility are afforded the opportunity to live in a safe and humane environment that is conducive to programming opportunities."

423.     At all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were responsible for monitoring those at the prison, transporting prisoners to and from medical appointments, and investigating grievances. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

424. At all times relevant to the events at issue in this case, Defendants James Dawson , was employed and/or contracted by Precision Specialities Corporation and/or Wexford and/or the IDOC and worked as a medical treater, and as such, was acting under color of law.

425. At all times relevant to the events at issue in this case, Defendant Warden Hvarre was employed by the IDOC in the capacity of Warden of Big Muddy River Correctional Center. In this capacity, Defendant Hvarre was acting under color of law.

426. Each defendant knew of James Dawson's sexual misconduct and/or the risk of sexual assault in one-on-one situations between prisoners and non-prisoners, considering the unbalance of power and the inability for prisoners to protect themselves.

427. James Dawson's scheme was to target prisoners as his sexual assault victims, including Plaintiff, capitilize on the power imbalance in prison, and the vistim's resulting inability to avoid and challenge James Dawson's advances.

428. There was no valid penological justification for Defendants inflicting and/or exposing Plaintiff to sexual assault.

429. By inflicting and/or failing to prevent sexual assault, Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment.

430. As a direct result of the express decisions and actions of each of the Defendants, the Plaintiff was subjected to sexual assault that was demeaning, dehumanizing, humiliating, and traumatizing.

431. Furthermore, Defendant Warden Hvarre and Unknown Big Muddy River Correctional Center and/or WEXFORD employees and/or Precision Specialities

Corporation had supervisory responsibility to prevent and stop the sexual assault and failed to do so.

432.     As a direct result of the express decisions and actions of each of the Defendants, Plaintiff suffered physical harm and emotional distress from the sexual assault.

433.     James Dawson intended to engage in non-consensual sexual contact with Plaintiff, to which Plaintiff did not consent.

434.     James Dawson did in fact have non-consensual sexual contact with Plaintiff.

435.     As a proxmate result of said sexual contact, Plaintiff suffered mental harm.

436.     Precision Specialities Corporation is liable for these torts as the employer/master of James Dawson.

WHEREFORE, Plaintiff, LESTER GREEN, respectfully demands judgment in his favor, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendant Precision Specialities Corporation. LESTER GREEN, further demands an award of punitive damages against Defendant Precision Specialities Corporation.

## <u>DAMAGES</u>

In addition to those damages set forth in each Count, Plaintiff has sustained the following damages and prays judgment be entered in his favor and against all Defendants, jointly and severally, for:

A.  Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of loss of income, enjoyment of life, and any other injuries inflicted by Defendants;

B.  punitive damages;

C.  statutory attorneys' fees pursuant to 42 U.S.C. § 1988;

D.  costs and expenses;

E.  pre- and post-judgment interest; and

F.  relief deemed just and proper by this Court.

PLAINTIFF REQUESTS TRIAL BY JURY

By:     /s/ S. A. Genson
        One of Plaintiff's Attorneys

ZANE D. SMITH & ASSOCIATES, LTD.
111 W. Washington Street, Ste. 1750
Chicago, Illinois 60602
Phone: (312) 245-0031
zane@zanesmith.com
sheila@zanesmith.com

**CERTIFICATE OF SERVICE**

I, S. A. Genson, an attorney, on oath states that a true and correct copy of the above document electronically filed with the Clerk of the Court on September 23, 2024, using the CM/ECF system which will send notification of such filing(s) to all attorneys of record. Under the penalties of perjury, I certify that the above statements set forth herein are true and correct.

/s/ S. A. Genson
S. A. Genson